IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN ANDREW KISTER, #264 274, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:20-CV-253-WKW |
| | ) | [WO] |
| DR. MICHAEL BOROWICZ, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I. INTRODUCTION

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Plaintiff Andrew Kister, a state inmate incarcerated at the Elmore Correctional Facility in Elmore, Alabama. Pending before the court is Kister's request for a preliminary injunction. He seeks to enjoin Defendants from delaying or denying adequate mental health care including regular periodic individual counseling sessions. As directed, Defendants filed a response to Kister's request for issuance of a preliminary injunction. Doc. 20. Upon consideration of Kister's motion for preliminary injunctive relief and after review of Defendants' response to the motion, the court recommends the motion under Rule 65, *Federal Rules of Civil Procedure*, be denied.

### II. STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court...." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if Plaintiff demonstrates each prerequisite: (1) a substantial likelihood of success on the merits; (2) irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may

cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Id*.; *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998);  *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1354-55 (11th Cir. 1983).  "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion"' as to the four requisites."  *McDonald's*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Mem'l Hosp. Inc*., 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A*., 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements.  *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper").  "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.'" *Suntrust Bank v. Houghton Mifflin Co*., 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting *Northeastern  Fla. Chapter of Associated Gen. Contractors of America v. City of Jacksonville,* 896 F.2d 1283, 1284 (11th  Cir. 1990).

     Turning to the first prerequisite for issuance of preliminary injunctive relief, the court considers whether Kister has proven a substantial likelihood of success on the merits.  Having reviewed the request for a preliminary injunction, Defendants' response, and in light of applicable federal law, the court concludes Kister fails to carry his burden.

### III. DISCUSSION

Defendants submitted an affidavit from James Prescott, the Mental Health Programs Director for Wexford Health Sources, Inc., ("Wexford") at the Staton, Elmore, and Frank Lee Correctional Facilities and relevant excerpts from Kister's medical records.[1] Defendants argue Kister has failed to show a substantial likelihood of success on his Eighth Amendment claim for inadequate mental health care. A violation of the Eighth Amendment requires a showing of "deliberate indifference" to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Specifically, an inmate must show that: (1) the prison officials had subjective knowledge of a risk of serious harm; (2) the prison officials disregarded that risk; and (3) the conduct rises above mere negligence. *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999). To establish an objectively serious deprivation of medical care, a prisoner must establish: (1) an objectively serious medical need, and (2) that the response made to the need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or medical malpractice. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). A "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and, in either case, must be one that if left unattended poses a substantial risk of serious harm. *Kelley v. Hicks*, 400 F.3d 1282, 1284 n. 3 (11th Cir. 2005).

Delay of treatment for a serious condition can rise to the level of deliberate indifference where delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified. *Taylor*, 221 F.3d at 1259-60 (11th Cir. 2000) (*citing Hill v. Dekalb Reg'l Youth Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994),

---

[1] Wexford holds the contract with the Alabama Department of Corrections ("ADOC") to provide health care and mental health care related services to prisoners in custody of the ADOC.

*overruled on other grounds by, Hope v. Pelzer*, 536 U.S. 730, 739 (2002)); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997). Whether the delay was tolerable depends on the nature of the medical need and the reason for the delay. *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003).

Assuming, *arguendo*, Kister suffers from a serious medical condition, Defendants' evidence reflects he has received timely, appropriate, attentive, and adequate mental health care and treatment for his mental health needs. Defendants affirm that Kister's requests for mental health care and treatment have not been denied or delayed nor have any medical providers interfered with Kister's ability to receive necessary mental health care. Doc. 20-1.

Kister's medical records reflect that on January 20, 2019, he received a referral from the medical unit because he was a newly arrived inmate with mental health needs. Mental health personnel saw Kister on January 24, 2019, who noted his complaints of pain caused by neuropathy from his bladder to his penis. Kister complained of chronic pain which caused him depression because, he claimed, he was not obtaining effective pain management. Medical personnel discontinued Kister's Prozac prescription and prescribed him Cymbalta to treat his depression. Mental health personnel discontinued Cymbalta after seeing Kister on February 21, 2019, because he complained the medication increased his pain. Medical personnel then prescribed Kister Abilify and gave him a referral to the medical unit for pain management. Although Kister indicated at the February 21 meeting he had sent in several sick call requests with no response, on February 25, 2019, the Director of Nursing, in response to the referral, informed mental health personnel that the medical unit had received no sick call requests from Kister. Doc. 20-1.

On March 14, 2029, Kister reported to both a nurse practitioner and a mental health practitioner he felt better about his depression and reported some relief from his pain. Medical

4

personnel referred Kister for lab work on March 18, 2019, due to elevated lipids. On April 14 and 15, 2019, Kister reported to medical and mental health personnel that his mood was good and his medication was working without causing him pain. Doc. 20-1.

A mental health team saw Kister on May 16, 2019, at which time he complained of increased depression. He also reported his medication had run out but his prescriptions for both Abilify and Trileptal were current. Doc. 20-1.

A mental health practitioner and a nurse practitioner saw Kister on August 1, 2019, who noted Kister's agreement that his progression had been minimal as pain was hindering his ability to focus on self-improvement. The nurse practitioner also noted that Kister indicated he had been sent to an outside urologist who recommended pain medications which the doctor did not prescribe preferring to refer Kister to a neurologist for further evaluation. The nurse practitioner observed that Kister was visibly frustrated in his inability to get pain medication. Doc. 20-1.

On November 7, 2019, a mental health practitioner saw Kister who documented a treatment plan update. The practitioner noted that Kister's progress was limited because of conflicting medical issues and noted Kister's frustration with continuing pain issues. On the same day a nurse practitioner saw Kister and changed one of his medications due to his report of increased anxiety. Doc. 20-1.

Mental health personnel saw Kister on December 8, 2019, who noted he was non-compliant with the medication Abilify having missed three consecutive doses. Kister's comment they "sometimes [] don't let you out of the dorm" was noted and he was counseled on the need for compliance with his prescribed medications. Doc. 20-1.

Dr. Banargee, a psychiatrist at Staton saw Kister on January 11, 2020. Kister informed the physician he was doing well on his current medications and the physician noted Kister was doing

well clinically. After missing two scheduled appointments with mental health personnel on January 25 and 27, 2020, Kister saw a mental health practitioner on February 3, 2020, during which he reported mild depression due to a family matter. Dr. Banargee saw Kister again on February 23, 2020, and increased one of his medications because Kister claimed to be experiencing mild depression. Kister saw mental health personnel on both March 17, 2020, and April 13, 2020, and reported both times he was doing well on his current medications, and he did not present with any target symptoms or have any issues or concerns. Doc. 20-1.

Defendants state the mental health professionals at Elmore offer group therapy sessions which inmates may attend and there are also groups managed by psychological associates and social workers. The groups are advertised to all inmates. Defendants affirm Kister has not participated in the available group therapy sessions. Doc. 20-1.

The court finds no evidence in the record that reflects any defendant has been deliberately indifferent to Kister's mental health conditions or concern. Rather, Kister's medical records show he has been seen regularly and repeatedly by medical and mental health staff since January 24, 2019, when he firster entered the prison system. To the extent there exists a difference in medical opinion on the provision of his mental health care and treatment, a difference in medical opinion will seldom rise to the level of a constitutional violation and based on the records filed does not do so here. *Hamm v. DeKalb*, 774 F.2d 1567, 1575 (11th Cir. 1985) (where a prisoner receives adequate medical care but desires to receive a different mode of treatment, the care provided does not amount to deliberate indifference); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (whether a defendant should have used additional or different diagnostic techniques or forms of treatment "is a classic example of a matter for medical judgment and therefore not an appropriate basis for liability under the Eighth Amendment.").

Having found Kister has failed to satisfy the first requirement for a preliminary injunction, the court need not consider the other factors. *See Church*, 30 F.3d at 1342; *Siegel*, 234 F.3d at 1176. Preliminary injunctive relief is not warranted.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for preliminary injunction (Doc. 4) be DENIED.

2. This case be referred to the undersigned for additional proceedings.

It is further

ORDERED that **on or before June 26, 2020**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 12th day of June 2020.

/s/ Stephen M. Doyle
STEPHEN M. DOYLE
UNITED STATES MAGISTRATE JUDGE