IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN ANDREW KISTER, #264274, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CASE NO. 2:20-CV-253-WKW-SMD |
| | ) |
| | ) |
| DR. MICHAEL BOROWICZ, et. al., | ) |
| | ) |
| Defendants. | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.   INTRODUCTION

John Andrew Kister, an indigent state inmate filed this 42 U.S.C. § 1983 action on April 14, 2020, alleging that while he was housed at Elmore and Staton Correctional Facilities he was treated with deliberate indifference beginning January 18, 2019, when he was denied adequate medical care for his neuropathy and denied adequate mental health care for his bipolar condition and depression. (Doc. 1 at p. 3). He sues all Defendants in their official and individual capacities. (Doc. 1 at p. 1). He seeks monetary damages and a prescription for tramadol. (Doc. 1 at p. 5). He later filed an Amended Complaint alleging that he is being denied adequate pain medication for his medical conditions. (Doc. 19 at p. 2). He names as Defendants in this action Dr. Michael Borowicz, Wexford Health Sources, Inc., G. Anthony, Dr. Banergee, James Prescott, Darryl Ellis, and Nurse Benton[1]. (Docs. 1 and 19).

The Defendants filed special reports (Docs. 21, 44), which included relevant evidentiary materials in support of these reports, including affidavits addressing the claims presented by Kister,

---

[1] Nurse Benton is incorrectly named as Nurse Benson in the complaint. (Doc. 1 at p. 2).

and medical and prison records. (Docs. 21-1 at pp. 1-117; 44-1 thru 44-5). In these documents, Defendants deny the claims against them. *Id.* Indeed, Defendant Ellis, a registered nurse, employed as the Health Services Administrator at Staton Correctional Facility, denies providing any hands-on nursing care to Plaintiff, but states that to his knowledge Plaintiff has received both mental health and physical health care "within the standard of care of medical providers providing mental health care and physical health care in the state of Alabama. (Doc 44-2 at p. 3). Further, Defendant Anthony, an LPN employed by Wexford Health and who acts as ombudsman for the Staton facility, states that he responded promptly to all medical grievances filed by Plaintiff. (Doc. 44-3 at pp. 3-4). Moreover, all Defendants testify that Kister's medical and mental health treatment has never been delayed or denied. Indeed, their testimony, which is based on and supported by the medical record evidence, demonstrates that Plaintiff received regular and thorough care for his conditions. (Doc. 21-1 at pp. 1-117; 41-1 at pp. 1-117; 44-2 at pp. 1-4; 44-3 at pp. 1-4; 44-4 at pp. 1-13; 44-5 at pp. 1-13).

After reviewing the special reports and exhibits, the court issued an order on June 10, 2020, requiring Kister to file a response to the Defendants' special reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. This order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 46 at p. 2).

Kister filed responses to this order. (Docs. 48, 49, and 50). In his responses, he continues to complain about the adequacy of his medical and mental health treatment at Staton. *Id.* Specifically, he alleges Defendant Ellis, as Health Services Administrator, has failed to ensure he received adequate healthcare, failed to respond to his grievances and failed to ensure he received "necessary narcotic medication." (Doc. 49 at p. 2). However, he admits that his grievances have been addressed by Defendant Anthony, as ombudsman. (Doc. 49 at p. 3). Also, he admits that he has "been prescribed tramadol 5 different times, but never for more than 30 days at a time." He claims he needs it continuously. (Doc. 50 at p. 1). Further, he complains that he was never sent to a free world urologist as recommended by the free world neurologist. (Doc. 50 at p. 2). Finally, he complains that he has not received enough one-on-one counseling for his psychiatric issues and the problematic effects of his psychiatric medication on his neuropathy conditions remain unresolved. (Doc. 50 at p. 3).

Pursuant to the directives of the order entered on June 10, 2020, the court now treats the Defendant's special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendants.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Kister's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. The court has undertaken a thorough and exhaustive review

4

of all the evidence contained in the record. After such review, the court finds that Kister has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the Defendants.

### III. DISCUSSION

**A. FACTS**

Plaintiff claims while he was housed at Elmore and Staton Correctional Facilities he was treated with deliberate indifference beginning January 18, 2019, when he was denied adequate medical care for his neuropathy and he was denied adequate mental health care for his bipolar condition and depression. (Doc. 1 at p. 3). With respect to Plaintiff's mental health claims, James Larry Prescott, Mental Health Director for Staton, Elmore, and Frank Lee Correctional Facilities, upon review of Kister's mental health chart, testified that Plaintiff "has been regularly seen by mental health professionals since [his] initial arrival and incarceration with the Alabama Department of Corrections" and "that at no time has [his] necessary mental health care needs been denied or delayed." (Doc. 44-5 at pp. 5-13). Prescott further indicated that Plaintiff's chart showed that he had been seen for "pain caused by neuropathy from his bladder to his penis" and depression and that he was prescribed Cymbalta for these ailments. *Id*. When Cymbalta did not adequately address Plaintiff's condition, his medication was changed and he was referred to the medical unit for pain. *Id*. Nurse Rice responded to the referral and indicated that the medical unit had received no sick call requests from Plaintiff.[2] *Id*. From March 2019 through April 2020, Plaintiff was seen at least eighteen times by medical professionals. *Id*. During these visits, he reported improvement at times for both his mental health and pain. *Id*. Prescott testified that,

---

[2] Plaintiff reported having placed several sick call requests to the medical unit with no response. (Doc. 44-5 at pp. 5-13). This is in direct conflict with the medical unit that indicated that it had not received any sick call requests from Plaintiff. *Id*.

based on the review of Plaintiff's chart, Plaintiff "has been seen regularly and repeatedly by the mental health staff since . . . [he] was initially incarcerated" and that his "mental health needs have never been denied or delayed at any time." *Id*.

Defendant Sreelekha Banerjee, M.D., a psychiatrist employed by Wexford Health at Staton Correctional Facility, confirms the Plaintiff's medical history as presented stated by Mr. Prescott, and opines based upon her medical education, experience and first-hand knowledge of mental health treatment provided to Plaintiff that "Mr. Kister has always received mental health care within the standard of care of mental health care providers in the state of Alabama." (Doc. 44-4 at p. 3). Likewise, Evelyn Benton, Mental Health LPN, confirms that the testimony given by Mr. Prescott is totally accurate and she explains, "[a]s a Mental health LPN, I am not considered a health care provider. Mr. Kister is followed by the Registered Nurse, Certified Registered Nurse Practitioners, and the psychiatrist at Staton, Dr. Banerjee. Working as Mental Health Licensed Practical Nurse at the Staton Correctional Facility, I follow the directions provided to me by the Registered Nurses, Certified Nurse Practitioners, and psychiatrists." (Doc. 44-5 at p. 3). She affirms that "I am not responsible for diagnosing or recommending health care treatment to Mr. Kister. Nor have I been responsible for providing mental health medications for Mr. Kister." (Doc. 44-5 at p. 4).

With respect to Plaintiff's medical claims, Dr. Michael Borowicz, who is the Medical Director at the Staton Correctional Facility, employed by Wexford Health Sources, Inc., and has first-hand knowledge of the medical care provided to Kister while housed at Staton Correctional Facility. Dr. Borowicz testified that when Plaintiff arrived at Staton Correctional Facility, he saw him about ongoing pain in his penis. (Doc. 21-1 at pp. 1-6). After being unable to contact Plaintiff's neurologist, Borowicz prescribed Neurontin and made arrangements for Plaintiff to be

seen by a urologist. Id. The outside urologist "did not find any urological problems with Mr. Kister upon physical examination" and referred Plaintiff to a neurologist. *Id*. The outside neurologist "found that Mr. Kister was not suffering from any objective problems from a neurological standpoint" and recommended Tramadol. *Id*. Neither the outside urologist or neurologist recommended further testing or follow up. *Id*. After Plaintiff had seen the urologist and neurologist, Dr. Borowicz prescribed Ultram (Tramadol) for a limited time, but it did not appear to help Plaintiff. *Id*. Dr. Borowicz testified that Plaintiff "is still being seen by me for his necessary medical needs" and that he "has always been treated for his necessary medical needs." *Id*. Dr. Borowicz further indicated that Plaintiff's "medical needs have not time been denied or delayed at any time," that he was "sent out to outside specialists . . . neither of which recommended any further treatment or objective tests[.]" *Id*. Thus, based on Dr. Borowicz's first hand knowledge of Plaintiff's treatment, he opined that Plaintiff "has at all times received medical treatment from me within the standard of care of physicians practicing medicine in the state of Alabama." *Id*.

The Court's independent review of Kister's medical and mental health records confirms the testimony of Dr Borowicz, Kister's treating physician, and the testimony of James Larry Prescott, Mental Health Director for Staton, Elmore, and Frank Lee Correctional Facilities, which is corroborated by the testimony of his treating psychiatrist, Dr. Banergee. (Doc. 21-1 at pp. 8-117).

## B. OFFICIAL CAPACITY CLAIMS

Plaintiff lodges claims against the Defendants in their official capacities and seeks monetary damages. However, these claims fail because these Defendants are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit

against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id.* Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996). Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.1990)).

In light of the foregoing, all Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir.

1995) (holding that damages are unavailable from state official sued in his official capacity). Accordingly, all claims against Defendants in their official capacities for monetary damages are due to be dismissed. The Court will now turn its attention to Plaintiff's claims brought against the Defendants in their individual capacities.

## C.  CLAIMS FOR DELIBERATE INDIFFERENCE

Plaintiff claims that the Defendants treated him with deliberate indifference when beginning January 18, 2019, he was denied adequate medical care for his neuropathy and denied adequate mental health care for his bipolar condition and depression. (Doc. 1 at p. 3). In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248,1255 (11th Cir. 1999) (holding that, for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis,

accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986). Furthermore, the mere fact that an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).

Besides the objective component, the Plaintiff must satisfy a subjective prong by showing that the Defendant acted with deliberate indifference. *Chandler v. Crosby,* 379 F. 3d 1278, 1289-90 (11th Cir. 2004). This does not require that the prison official purposefully acted to cause harm, but it does involve something beyond mere negligence. *Id.* The Eleventh Circuit has recently clarified under the subjective prong, that a Plaintiff must demonstrate a Defendant "acted with more than gross negligence" to demonstrate deliberate indifference. *Wade v. McDade*, 67 F. 4th 1363, 1373 (11th Cir. 2023) (granting summary judgment for nurses and holding that their failure to ensure inmate received his daily doses of anti-convulsion medicine did not rise to the level of "more than gross negligence") *citing Goebert v. Lee Cnty.,* 510 F.3d 1312, 1330 (11th Cir. 2007) ("an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay.")(Quotation omitted). Indeed, the Defendant must know of and disregard an "excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id; see also, Wade*, 67 F. 4th at 1374.

Based upon the Court's independent review of the medical records, the Court concludes that Plaintiff's claims of deliberate indifference fail. Indeed, the undisputed medical evidence demonstrates that Plaintiff has at all times received prompt and thorough medical treatment for his

neuropathy and regular counseling and treatment for his mental conditions. Specifically, he has been seen regularly by both medical and mental health professionals, prescribed medication for his mental health and medical conditions, and was seen by both a free world neurologist and urologist. Thus, the record is devoid of evidence from which this Court could conclude that Defendants "acted with more than gross negligence" when providing medical and mental health treatment to Plaintiff. *Wade,* 67 F. 4th at 1373 (11th Cir. 2023). Further, the Court concludes that at most Plaintiff has demonstrated his desire for a different mode of medical treatment, which under the current law, does not amount to deliberate indifference violative of the Constitution. *Hamm,* 774 F.2d at 1575. Accordingly, summary judgment is due to be granted as to all Defendants on Plaintiff's claims for deliberate indifference.

### D. RESPONDEAT SUPERIOR

Plaintiff alleges that Defendant Ellis[3] is liable to him in his supervisory position based on a theory of respondeat superior for the alleged actions or inactions of other medical personnel, the law is well established; supervisory officials cannot be held liable in § 1983 actions under any theory of respondeat superior or vicarious liability. *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994). Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A

---

[3] To the extent that Plaintiff alleges other Defendants are liable to him in their supervisory capacities, those claims likewise fail for the reasons explained hereafter.

supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for the alleged unconstitutional conditions could attach to Defendants in their supervisory capacities only if Plaintiff demonstrated that each Defendant "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [her] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Indeed, a causal connection maybe established either when (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or when (2) "a supervisor's custom or policy. . . result[s] in deliberate indifference to constitutional rights" or when (3) "facts support an inference that the supervisor directed the subordinate to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (Citations omitted). Based upon the Defendants' undisputed affidavit testimony, the medical records, and the court's careful review of the Plaintiff's allegations, the court concludes that the Plaintiff's claims fail because as stated above the Plaintiff has not demonstrated any Defendant acted with deliberate indifference toward him when they provided medical and mental health treatment to him. Neither has Plaintiff alleged any facts demonstrating that Defendant Ellis, or any other Defendant, was aware of any wide-spread abuse in medical

services, nor has he demonstrated that Ellis, or any other Defendant, proffered a custom or policy resulting in deliberate indifference to his medical needs. Also, he has failed to allege any fact demonstrating Defendant Ellis, or any other Defendant, knew their subordinates acted unlawfully. Accordingly, the claims against Defendant Ellis, and all other Defendants, in their supervisory capacities also fail for the reasons stated above.

For the above stated reasons, it is the RECOMMENDATION of the Magistrate Judge that

1. The Defendant's motions for summary judgment (Docs. 21 and 44) be GRANTED.

2. Judgment be GRANTED in favor of the Defendants.

3. This case be DISMISSED with prejudice.

4. Costs be taxed against the Plaintiff.

On or before **August 28, 2023**, the plaintiff may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which he objects. Frivolous, conclusive or general objections will not be considered by the District Court. The plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993)("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are

adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 14th day of August, 2023.

          /s/  Stephen M. Doyle
STEPHEN MICHAEL DOYLE
UNITED STATES MAGISTRATE JUDGE